Lucretia A. Storms, administratrix, *vs.* Frederick B. Smith.

Suffolk. March 10. — May 10, 1884. Devens & Colburn, JJ., absent.

If a mortgagor in possession of personal property removes and stores it with a third person, who has no actual notice of the mortgage, which is recorded, the mortgagee, who afterwards is informed of the removal and storing, and expresses no disapproval of the same, is not liable to such person for the charges for storage, although the storage is necessary for the preservation of the property, but may maintain an action against him for its conversion.

Tort, for the conversion of certain household goods. Trial in the Superior Court, before *Pitman,* J., who reported the case for the consideration of this court, in substance as follows:

One Morrill, on July 31, 1874, made a mortgage of the property in suit, which was then at 224 Shawmut Avenue, in Boston, to his father-in-law, William R. Storms, the plaintiff's intestate,

to secure the payment of his promissory note for $500, payable in one year; this mortgage was duly recorded. Morrill at that time occupied two rooms in the house, and the property remained there until September 26, 1877, when he was suddenly compelled to remove therefrom, and had no place in which to store the goods. The defendant was at that time engaged in the business of piano and furniture moving, and Morrill employed him to move the goods. On the afternoon of the same day, the defendant placed the goods on two wagons, where, at the request of Morrill, they remained until six o'clock in the evening of that day, when Morrill, not being able to find a suitable place in which to store the goods, requested the defendant to store them, and agreed to pay him two dollars per load for each month or fraction of a month during which they should be so stored. Thereupon the defendant stored the goods in a room, as requested by Morrill, and continued to store them in different places in Boston, at Morrill's request, until June 30, 1880, when one Sherman came to the defendant's house, and, exhibiting said mortgage and a power of attorney from Storms, declared that he had come to foreclose the mortgage. This was the first notice the defendant had that there was a mortgage on said goods, and he claimed the right to retain them, on the ground that he had a lien upon them for carriage and storage. Sherman thereupon proceeded to take away a portion of the goods, before the defendant could interfere to prevent any further removal.

On June 30, 1880, there was due the defendant for the moving and storage of said goods a balance of $121 ($20 having been previously paid the defendant by Morrill), and otherwise no tender was ever made to the defendant by any one, either in whole or part satisfaction of his demand. It was proved that Storms had been informed that the goods had been removed from Shawmut Avenue, and stored by the defendant, about two months after the removal; and there was no evidence of dissent or disapproval on the part of Storms. The removal was a compulsory one, and the storing was a necessity to prevent the goods from exposure to loss and damage, which might result from their being put out and left on the sidewalk.

Upon the foregoing facts, the judge ruled that this action could be maintained; and ordered a verdict for the plaintiff.

If the ruling was correct, judgment was to be entered on the verdict; otherwise, the verdict to be set aside, and judgment entered for the defendant.

*R. W. Shea*, for the defendant.

*N. B. Bryant*, for the plaintiff.

HOLMES, J. The mortgagor of the chattels was personally liable to the defendant for their storage, and he could not subject the mortgagee's interest to a lien in support of his debt without the mortgagee's authority. The mortgagee had given no authority other than what was to be implied from his allowing the mortgagor to remain in possession of the mortgaged goods, coupled with the fact that it was necessary that the goods should be stored somewhere to prevent their destruction. If these circumstances were enough to support the defendant's claim, every mortgagor in possession of perishable goods would have power to create a paramount lien upon them, although the proviso against suffering them to be attached, or attempting to sell or remove them in the form of chattel mortgage commonly used, indicates pretty clearly that no such power is intended to be given. But these circumstances are not enough. The mortgage was recorded, and the defendant therefore had notice of it. Hence he was not at liberty to assume that the mortgagor had an absolute *jus disponendi* from his possession alone ; and, if storage was necessary, he was chargeable with notice that the plaintiff had a right to judge for himself where it should be, if his interest was to be charged with the cost. *Richardson* v. *Rich*, 104 Mass. 156. *Sargent* v. *Usher*, 55 N. H. 287. *Bissell* v. *Pearce*, 28 N. Y. 252.

In *Hammond* v. *Danielson*, 126 Mass. 294, the description of the mortgaged hack as "now in use at the American Stables" was deemed sufficient to express the intent that the hack "should continue to be driven for hire, and should be kept in a proper state of repair for that purpose, not merely for the benefit of the mortgagee, but for that of the mortgagor also." But permission to a mortgagor to retain household furniture for his own use conveys no permission to store it with a third person on account of the mortgagee.

The fact that, some time afterwards, the plaintiff was informed that the property had been stored, does not alter the case. He

was not informed that any attempt would be made to hold the goods as against him, or even that the storage had not been paid, and he knew that the defendant was chargeable with notice of his mortgage, and therefore of the want of authority to bind his property on the part of the mortgagor. *Hollingsworth* v. *Dow*, 19 Pick. 228. *Globe Works* v. *Wright*, 106 Mass. 207. *Sargent* v. *Usher*, 55 N. H. 287, 293. See, generally, *Robinson* v. *Baker*, 5 Cush. 137 ; *Gilson* v. *Gwinn*, 107 Mass. 126. It is still clearer that no personal promise can be implied from the plaintiff's silence, as argued for the defendant. For the plaintiff knew that the mortgagor had an interest to protect the property, and had a right to assume that he contracted on his own behalf, as in fact he did. Neither was the plaintiff's silence any fraud, or warrant for the defendant's inferring that the mortgage was fraudulent. The plaintiff had a right to rely on the notice which the recording of his mortgage gave to all the world, and to leave them to make inquiries if they wanted explanations.

*Judgment on the verdict.*