## TUCKER v. WERNER.

(Superior Court of Buffalo, General Term.   December 21, 1892.)

1. CHATTEL MORTGAGES—POSSESSION BY MORTGAGOR—LIEN FOR REPAIRS.
    If the mortgagee of a buggy under a mortgage duly filed, who has the right at any time to take possession, allows the mortgagor to use it, and continue in the apparent ownership, prosecuting his business, he impliedly authorizes him to take all necessary steps to preserve the property, and render it fit for use, and the lien of a mechanic for repairs ordered by him is superior to the lien of the mortgage.

2. SAME—LIEN FOR STORAGE.
    The lien of the mechanic for storage after making the repairs is not superior to the lien of the mortgage, since the mortgagee did not impliedly consent to the storage, and was not bound to take notice thereof, and since the mechanic was not bound to store the property, but could at any time have foreclosed his lien.

Appeal from municipal court.

Action of replevin by Henry C. Tucker against George Werner. From a judgment for defendant, plaintiff appeals.   Affirmed.

Argued before TITUS, C. J., and HATCH and WHITE, JJ.

Charles P. Norton, for appellant.
Tracy C. Becker, for respondent.

HATCH, J.   The action is replevin, and the facts are agreed upon. Plaintiff held a chattel mortgage upon a buggy and other property previously owned by one Morgenstern, executed by him as collateral security for the payment, 30 days after date, of a certain promissory note, indorsed by plaintiff for Morgenstern, and held by the Bank of Buffalo, and as continuing security for any renewals of the same or for other indorsements of Morgenstern's paper in an amount not to exceed in all the sum of $284.   The mortgage was duly filed, and subsequently renewed as required by law.   The possession and use of the buggy, subject to the conditions of seizure and sale contained in the mortgage, remained in Morgenstern, and while so in use he took the buggy to the factory of defendant, and requested him to make certain repairs thereon, which defendant did, amounting in value to $25.35. When the same were completed, pay was demanded of Morgenstern, which was refused, and defendant retained possession of the buggy, and now claims a lien thereon for the value of the repairs, and storage since the demand for pay, the later item being reasonably worth one dollar per week.   Plaintiff had no knowledge of the delivery of the buggy to defendant, of the repairs made thereon, or of the fact of storage or its charge, until he made a demand upon defendant for the surrender of the property to him by virtue of his mortgage, when the lien for both items was asserted, and delivery of the property was refused until payment made.   Upon these facts the court below rendered judgment in favor of the defendant, and awarded the possession of the property to him.   I do not understand, from the case agreed upon or from the argument of counsel, it is denied that at common law a lien existed in favor of the mechanic for repairs made of value to the property.   Con-

tention against it would be futile.   Morgan v. Congdon, 4 N. Y. 553; Laundering Co. v. Hahlo, 105 N. Y. 240, 11 N. E. Rep. 500.   It is, however, earnestly insisted that such lien is subordinate to the lien of a chattel mortgage duly filed, and, as applied to the circumstances of this case, is inferior to plaintiff's lien.   This presents the question to be decided.   While the mortgage provides that the mortgaged property is in a certain barn, and that the same is not to be removed therefrom without the written consent of plaintiff, yet, it appearing in the agreed statement of facts that Morgenstern was to have the possession and use of the buggy, the case must be disposed of upon the theory that such use was with plaintiff's knowledge and consent.   He thus clothed Morgenstern with authority and dominion over the property, coupled with an apparent ownership.   It may also be assumed, from the nature of the repairs, as shown by the bill, and the character of the property, in constant use, that such repairs were necessary, useful for its preservation, and enhanced its value.   If we are right in these inferences, we have a case where the mortgagee authorized a use of the property, clothed the mortgagor with apparent ownership, and where the work done has added value to the property.   This, as I view the case, brings it within the principle of the · decision in Scott v. Delahunt, 65 N. Y. 128.   It is there laid down as a rule that all mechanics have a lien for labor bestowed, so long as they retain possession of the article, and that where a mortgagee allows another to use the property, and continue in the apparent ownership, prosecuting his business, which necessitates the use of the article, and where such use was contemplated, such relation raises the implication that the mortgagor may take all necessary steps to preserve the property, and render it fit for use; that under the circumstances necessary repairs are superior to the lien of the mortgage, as the mortgagee has authorized them.   It is true that in that case the mortgagee knew of the repairs being made, and made no objection thereto, and that the mortgage was then due; but in the discussion of the case no mention is made of those facts as controlling the decision, but therein it is placed upon the ground that possession, use, and apparent ownership were in the mortgagor, and he was prosecuting a business with it, and these facts were what raised the implication of right to preserve the property for purposes of use, as it was for the benefit of all concerned.   I can find nothing in the case of Payne v. Batterson, partially reported in 22 Wkly. Dig. 109, and of which we have been furnished with a manuscript opinion in full, which conflicts with this view.   In that case there was a conditional sale of the property, the title remained in the vendor, he in no wise authorized the repairs, and there were no circumstances from which consent to their performance could be implied.   Likewise the case of Broman v. Young, 35 Hun, 173, is distinguishable.   In that case the work was performed under contract with the mortgagor, the mortgagees having nothing to do about it.   True, they knew of the repairs, but they were powerless to prevent them or consent to them, as the property was not under their control, and at the time they had no right of seizure, and could not by any act of theirs take possession.   In the present case, by the express

provision of the mortgage, plaintiff was authorized to seize and take possession of the property at any time he chose,—a very significant distinction. The case of White v. Smith, 44 N. J. Law, 109, also supports the doctrine here contended for. In that case the wife was owner of a wagon, which she had delivered to her husband, who used it, and was clothed with apparent ownership. He delivered it to a mechanic, who repaired it, upon the supposition that it belonged to the husband. The lien was supported against an action brought by the wife, upon the ground that the property was enhanced in value, and authority was implied upon the part of the husband to contract for the repairs by reason of his relation to the property, although the wife had no knowledge of the service rendered.

Quite similar to the present case is that of Hammond v. Danielson, 126 Mass. 294. There repairs were made upon a hack upon which was a chattel mortgage not yet due. It was held that the mechanic had a lien for his repairs superior to that of the mortgagee, although the mortgagee was not informed and had no knowledge of their performance. This decision went upon the ground that the mortgage contemplated the possession and use of the property in the prosecution of the mortgagor's business, and, as the repairs were necessary to preserve the property and continue it fit for use, authority from the mortgagee to contract for the repairs was to be implied in the mortgagor, and the lien was enforced. As has been already observed in this case, authority for the use of the vehicle by the mortgagor in the prosecution of his business is one of the facts agreed, so there is no difference in principle between the cases. It is claimed that this decision is not sound, and has in fact been overruled. Its unsoundness is claimed to exist in the fact that it applies to the case the doctrine of maritime liens, but the basis upon which maritime liens are upheld grows out of the fact that they are essential to the preservation of the vessel, that it may be used in the prosecution of its voyage, thus earning money with which to pay the mortgage debt, and also the difficulty of procuring needed repairs in a foreign port, unless the vessel were the pledge of payment, relieved from other burdens. But what difference in principle can there be where a carriage is used for the purpose of earning money to pay a debt, and the repairs are essential for the preservation and the continuance of earning power? The article may be the very thing which earns the money, like the hack, or it may be a vehicle by which the individual is enabled to carry on an industry, from which he earns what he is obligated to pay. In either event there is always found some one of the principles upon which the lien rests, and sometimes they are combined, as where the repairs have added value to the property and thereby enhanced the security, or the repairs have preserved the property to enable it to pay the security. I can see no sound distinction in principle between the case cited and the authorities with which the learned judge supported his conclusion, although they may not at all times be applicable to a case where a lien may be upheld, based upon some one of the principles noted, or where the lien fails because the principle of maritime liens is inapplicable. It is sufficient to say that the case criticised is not one

of either class. The authorities claimed to overrule Hammond v. Danielson, supra, have been examined. The case is mentioned in Storms v. Smith, 137 Mass. 203, where it is said:

"The description of the mortgaged hack as 'now in use at the American Stables' was deemed sufficient to express the intent that the hack should be driven for hire, and should be kept in a proper state of repair for that purpose, not merely for the benefit of the mortgagee, but for that of the mortgagor."

I am unable to see anything in this indicating a disposition to depart from the doctrine announced in the prior case, or in the reasoning of the other cases cited, both in Massachusetts and other states, which destroys its force and efficacy as an authority. There is no doubt of the correctness of counsel for the plaintiff as to the rights obtained by a chattel mortgage duly filed, but these authorities find no application here, for the reason that under the facts of this case plaintiff must be assumed to have impliedly authorized the repairs, and, having authorized them, he is not now to be heard as asserting a superior lien by virtue of his mortgage.

I am, however, of opinion, upon the authority of Storms v. Smith, 137 Mass. 203, that defendant is not entitled to assert a superior lien over the mortgage for storage, and for the further reason that no implication can arise that plaintiff consented to such storage, or was bound to take notice of such charge. In addition thereto, defendant was not obliged to store the buggy, for he could at any time have secured his pay by a foreclosure of his lien. If these views are correct, the judgment must be affirmed    All concur.