[No. 13473.   Department One.   July 11, 1916.]

H. N. ROTHWEILER *et al., as Rothweiler & Company,*
*Respondents,* v. WINTON MOTOR CAR COMPANY *et al.,*
*Appellants,* PAUL NEAL *et al., Defendants.*[1]

LIENS—CHATTEL LIENS—PRIORITIES — CHATTEL MORTGAGES — STAT-
UTES.   A prior chattel mortgage is superior to the lien given by
Rem. & Bal. Code, § 1154, to one furnishing labor and materials on
any chattel at the request of the owner, for one year, notwithstand-
ing surrender to the owner, and Id., § 1156, providing that every per-
son in possession under agreement for the purchase shall be deemed
the owner and the lien shall be superior "to the rights of the person
holding the title or any lien thereon antedating the time of expendi-
ture" by the lien claimant; since "any lien thereon" refers to a reser-
vation of title or lien in aid of ownership, and not to a chattel mort-
gage, in view of the purpose of the act "to secure and perpetuate"
liens depending upon possession and not liens created and protected
under independent statutes, and in view of the subsequent act, Rem.
1915 Code, § 3660, reaffirming the standing of chattel mortgages un-
der Rem. & Bal. Code, §§ 3659-3669, which was not intended to be
impliedly repealed by the chattel lien law.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered March 13, 1916, upon findings
in favor of the plaintiffs, in an action to foreclose a chattel
mortgage, tried to the court.   Affirmed.

[1]Reported in 158 Pac. 737.

*J. J. Geary,* for appellants.

*E. L. Skeel, W. M. Whitney, Fred C. Brown, Spence &
Denham,* and *R. M. Jones,* for respondents.

CHADWICK, J.—Appellant Winton Motor Car Company
made certain repairs and furnished new tires for an auto-
mobile owned by the Waterhouse Sands Company, but held
under a conditional sales contract by one Willis Smith. The
machine was covered by a chattel mortgage made by a former
owner in favor of the respondents. Appellant filed a lien upon
the automobile, which it asserts in this action. Thereafter
Smith stored the machine with the Franklin Wicks Company.
It also asserts a possessory lien for storage and repairs.

Addressing ourselves first to the lien for repairs, we come
at once to a consideration of the statute.

"Section 1154. [Rem. & Bal. Code.] *Every person, firm
or corporation who has expended labor, skill or material on
any chattel, at the request of its owner,* or authorized agent
of the *owner, shall have a lien upon such chattels for the con-
tract price for such expenditure, or in the absence of such
contract price, for the reasonable worth of such expenditure,*
for a period of one year from and after such expenditure,
notwithstanding the fact that such chattel be surrendered to
the owner thereof; provided, however, that no such lien shall
continue after the delivery of such chattel to its owner as
against the rights of third persons who may have acquired
an interest in, or the title to, such chattel in good faith, for
value, and without actual knowledge of the lien."

"Section 1156. [Rem. & Bal. Code.] *Every person who
is in possession of a chattel, under an agreement for the pur-
chase* thereof, whether the title thereto be in him or his vendor,
shall, for the purposes of this act, *be deemed the owner there-
of, and the lien of the person expending material, labor or
skill thereon shall be superior to and preferred to the rights
of the person holding the title thereto, or any lien thereon
antedating the time of expenditure of the labor, skill or ma-
terial thereon by a lien claimant, to the extent that such ex-
penditure has enhanced the value of such chattel.*"

We have italicized the words which appellants insist are apt to support their liens and to give them priority over the mortgage lien of respondents. It is contended that the words "any lien thereon" are broad enough to include a chattel mortgage. They are broad enough, but we cannot satisfy the law by selecting words that might justify a holding that is desired. The rules of statutory construction demand that we consider words in the light of the whole statute and of other statutes affecting the subject-matter of our inquiry.

It was the rule at common law that one who performed labor, lent skill or furnished material for the building or repair of a chattel had a lien upon the thing to which he had contributed his labor, skill or material. But the existence of the common law lien depended upon possession. Not only the lien, but the right to assert it vanished when the chattel was surrendered to another. Under modern business conditions this rule became harsh and inadaptable. The legislature sought to cure the mischief, and accordingly passed the act of 1905. Its purpose is plainly disclosed by the word "perpetuate," which occurs in the title.

"An Act to secure and perpetuate liens upon chattels for labor, skill and materials expended thereon, and providing for the enforcement thereof." Laws of 1905, ch. 72, p. 137.

Reading the words "or any lien thereon" in connection with the words "every person who is in possession of a chattel under an agreement for the purchase . . . shall . . . be deemed the owner . . . and the lien . . . shall be superior to and preferred to the rights of the person *holding the title thereto*", means no more than that the lien referred to is a reservation of title, or a lien in aid of ownership, and not one created by the parties and protected under independent statutes. The purpose of the statute was to charge the owner, whether his ownership rested upon a legal or equitable title to the property, for all charges made for

its betterment.   This must be so, for, at the time there was upon the statute books a chapter devoted to chattel mortgage liens and prescribing the manner and effect of their recordation.   Chapter 1, Chattel Mortgages, Rem. & Bal. Code, §§ 3659-3669.

That the legislature had no thought of destroying prior liens of an independent character is further evidenced by reference to the subsequent act, Laws of 1915, ch. 96, p. 277 (Rem. 1915 Code, § 3660), which reaffirms the standing of a chattel mortgage.   In providing that a chattel mortgage shall be void as to all creditors of the mortgagor, both existing and subsequent, if certain things are not done, it effectually provided that it is good as against all creditors if the things are done.   Our holding and the judgment of the trial judge is well sustained by the case of *Fitch v. Applegate*, 24 Wash. 25, 64 Pac. 147, where a like broad expression was refused a literal interpretation.   The court said:

"It is true that the language is 'no mortgage, deed of trust or conveyance'; but we think that the intention of the law makers will not be reached by giving a literal interpretation to the language used, and that, if it had been the intention of the legislature to have made an extraordinary provision, as this would be, if so construed, it would have used language more clearly expressing such intention."

If other reasons be demanded, it may be said that to hold with appellants we would have to hold that the statute fixing the status of chattel mortgages had been repealed by implication.   Aside from the fact that repeals by implication are not favored and will not be indulged except it be to serve a plain legislative intent, the act of 1915 would be sufficient notice that the legislature intended no such repeal.   Otherwise it would have made a reservation in favor of subsequent liens of the character now asserted.

This holding makes it unnecessary to discuss the question whether a lien can be asserted for the new tires with which the machine was equipped by the appellant motor company.

We hold also that the chattel mortgage is superior in right to the lien for storage. We adopt the reasoning of the court as pronounced in *Storms v. Smith*, 137 Mass. 201.

Affirmed.

MORRIS, C. J., MOUNT, ELLIS, and FULLERTON, JJ., concur.